## Dwier Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Milton A. Kamsler* of *Folz, Bard, Kamsler, Goodis & Greenfield,* for petitioner.

KLEIN, P. J., November 16, 1955.—W. Kirkland Dwier died on May 18, 1950, leaving a will and two codicils, which provided, inter alia, for the creation of two trusts. From the income from Trust No. 2 he directed his trustees to pay $300 a month to his sister, Mary E. Dwier, for life, and the balance, and upon his sister's death, the entire income to his wife, Florence Lippman Dwier, for life. Testator's sister died on September 13, 1951; his wife is still living.

By the second codicil to his will testator provided, further:

"1. I direct that out of the balance remaining from Trust No. 2 at the death of the survivor of my wife, Florence Lippman Dwier, and my sister, Mary E. Dwier, there be paid to the Women's Homeopathic Hospital, now situate at 20th and Susequehanna Avenue, Philadelphia, Pa., the sum of Twenty-five Thousand Dollars ($25,000) to be held by them in a fund to be known as the 'W. Kirkland Dwier Research Fund' and the income therefrom to be used as a research fund for their Eye, Ear, Nose and Throat Department, or, if at any time there be no such department, then the income shall be used for the general purposes of the Hospital as the Trustees of said Hospital shall direct. . . ."

The executors filed their First and Final Account on December 26, 1951. At the audit which was held February 4, 1952, it appeared that the Women's Homeopathic Hospital had gone out of existence and had been dissolved. In view of the fact that the life tenant was living, the Auditing Judge refused to make any disposition in the adjudication of the legacy to the closed hospital.

At the motion list called on October 28, 1955, the executors presented a petition which recites, inter alia, that "The Federal Tax authorities have assessed the estate on the value of the bequest to the WOMEN'S HOMEOPATHIC HOSPITAL in view of the uncertainty as to the final disposition of this bequest by the Court." The executors, therefore, request the Court, at this time "to appoint an Amicus Curiæ with powers of a Master for the purpose of determining, under the Cy Pres doctrine, the charity entitled at the death of the life tenant, to receive, the TWENTY-FIVE THOUSAND DOLLARS ($25,000) bequest formerly payable to the WOMEN'S HOMEOPATHIC HOSPITAL."

Many illuminating definitions of the word "charity" may be found in the numerous decisions on the subject handed down prior to the adoption of the Estates Act of April 24, 1947, P. L. 100, which is now in effect in this state. The following definition, based largely on the definition in A. L. I. Restatement of the Law of Trusts, §368, is found in section 1 of the act:

"(1) 'Charity' or 'charitable purposes' includes but is not limited to the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community."

It is difficult for us to understand how anyone could suggest that the gift in the present case might not be a charitable one, either under the Estates Act definition or under any of the definitions found in any of our previous decisions, or that the $25,000 remainder interest in the present trust could possibly be subject to Federal Estates Tax.

There cannot be the slightest question that the Women's Homeopathic Hospital was a charity within the definition of the statute and that the purpose of

the gift over in the present case was purely charitable. It is also crystal clear that the gift to the hospital was absolute and vested subject only to postponement of possession until the death of the life tenant.

The conflicting and inconsistent cy pres statutes in effect prior to the adoption of the Estates Act of 1947, were supplanted by Section 10 of the Act which provides:

"Administration of Charitable Estates. Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfilment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

It is obvious that the purpose of the legislature was to amplify and not to derogate from the application of the cy pres doctrine. This is evident from the following explanatory comment in the report of the Joint State Government Commission:

"Section 10 is in accordance with the strong tendency of the courts to apply cy pres whenever possible and to limit very narrowly the right of next of kin to get the property back. To reach this result the section goes the whole way and lip service to a 'general charitable intention' will no longer be required.

"Except where the conveyor makes an alternative gift, the only question which will be before the court will be whether the original gift has failed and if so

to what other charity the fund shall be awarded. The conveyor's heirs, next of kin and residuary beneficiaries will no longer be in a position to bargain with expectant charities."

It is certain that the $25,000 legacy to the Women's Homeopathic Hospital must be preserved as a charitable gift and that a substitute charity must be selected when the life tenant dies. The fund must, in any event, be devoted to a charitable use and cannot, under any circumstances, revert to decedent's estate or his next of kin. The cy pres doctrine, which is a rule of approximation, requiring the testamentary plan to be performed as closely as is reasonably practicable, is certain to be invoked to prevent the failure of the charitable trust. It would be premature, however, to entertain a petition such as the one before us, until the fund which is destined to become the subject of cy pres proceedings is available for distribution. In the present case testator's widow, the life tenant, is still living. The principal of the trust cannot be disbursed until her death, and she may live for a great many years. It is impossible at this time to prognosticate the circumstances which will exist when the fund is finally available for payment. Progress in medical research and changes in the community's hospital requirements, generally, will control our ultimate determination of a successor charity to the closed hospital. Any attempt to select a substitute charity at this time would be a senseless and futile act.

We therefore hold that petitioner's request is premature and untimely and we accordingly enter the following

### Decree

And now, November 16, 1955, the request to appoint an Amicus Curiæ with powers of a Master, to advise the court in respect to the distribution of a fund

of $25,000, payable to the Women's Homeopathic Hospital upon the death of the present life tenant, is denied.